Eugene Joseph **OLIVER**, Petitioner, Respondent,

v.

**STATE of Minnesota, Appellant.**

No. C5–92–436.

Supreme Court of Minnesota.

July 9, 1993.

Rehearing Denied Sept. 3, 1993.

Hubert H. Humphrey, III, Minnesota Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Earl E. Maus, Cass County Attorney, Walker, for appellant.

Deborah Ellis, St. Paul, for respondent.

## OPINION

COYNE, Justice.

Defendant, Eugene Joseph Oliver, was found guilty by a district court jury of criminal sexual conduct in the first degree for participating with Russell Tilbury in the joint sexual assault of Tilbury's 12–year-old niece, A. Defendant sought postconviction relief, claiming that his trial attorney failed to represent him effectively. The court of appeals, in an unpublished opinion, affirmed the award of postconviction relief in the form of a new trial, but based its decision on a different ground: specifically, it concluded that plain error of a prejudicial nature was committed when the prosecutor, without any objection by defense counsel, called Tilbury, who had already pleaded guilty to criminal sexual conduct in the second degree, and elicited testimony from him and from the investigators who questioned him, that he had given a statement shortly after his arrest in which he admitted participating with defendant in the sexual assault of the girl. That statement was inconsistent with Tilbury's in-court testimonial denial that defendant and he had sexually abused his niece. Concluding that this case is controlled by *State v. Ortlepp*, 363 N.W.2d 39 (Minn.1985), which is closely in point, we reverse the decision of the court of appeals and reinstate the judgment of conviction.

Complainant, age 12, was living with her father in rural Backus. On the last weekend of deer hunting season in November of 1989 K., a good friend of A.'s mother, asked A. to babysit with K.'s 7–year–old son. K. was living in a rented trailer 4 miles from A.'s father's residence. The trailer was owned by defendant, who planned on going to Florida at the close of the hunting season but was still living there. A. had known defendant "ever since [she could] remember." Russell Tilbury was K.'s on-again off-again boy friend. A. was also well acquainted with Tilbury, who is her mother's brother.

A. testified that when she went to sleep on the living room couch on Saturday night, defendant, Tilbury and two other men were in the kitchen; K. was not home. A. woke around midnight and went to the bathroom. When she lay down again, defendant and Tilbury came into the living room and, after saying something to each other, started removing her clothes. Tilbury then held her arms while defendant penetrated her vagina with his penis. When defendant finished, Tilbury got on top of her, fondled her and rubbed his penis against her vagina. After the men finished, she got up and saw that she was bloody and had "white stuff" all over her legs. Feeling "gross," she went into the bathroom and showered. She stayed in the bathroom a long time, and when she came out, defendant and Tilbury were asleep. A. went back to bed and slept until morning.

She did not tell anyone for a couple of weeks, but then fear that she was pregnant prompted her to tell a school friend that she might be pregnant. A former teacher asked A. if the rumor that she might be pregnant was true. A. nodded in reply but did not volunteer any information and the teacher made no further inquiry. In a later interview by a school counselor, A. said that she did not know who had assaulted her. When her father tried to talk to her, A. "clammed up" and told him nothing.

Somehow K. learned of A.'s fear and told A.'s mother, who lives in the metropolitan area. Before Christmas A. went to live with her mother, who, thinking A. was pregnant, immediately pressured A. to identify the would-be father. A. then told

her mother that defendant and Tilbury had held her down and raped her.

A.'s mother notified the authorities. Dr. Carolyn Levitt interviewed and examined A., and she concluded that the condition of A.'s vagina was consistent with her having engaged in sexual activity.

Tilbury was arrested in January of 1990 and, after being given a *Miranda* warning, gave a recorded inculpatory statement which also linked defendant to the offense.[1] Although apparently not provided with any details of the allegations by the investigators, Tilbury said things which were consistent in detail with A.'s statements: he admitted fondling her, getting an erection, and getting on top of her and attempting penetration; he also implicated defendant in the assault. He showed considerable anguish over what he had done.

Three days later, however, Tilbury told a deputy that he had talked with other people over the weekend and that what he had told the deputy and the BCA investigator was "bullshit."

Subsequently, in a so-called *Goulette*-type guilty plea ("I plead guilty but I'm not guilty"), Tilbury pleaded guilty to a reduced charge of criminal sexual conduct in the second degree.

At defendant's trial the state called Tilbury, knowing he was going to deny ever being at the trailer on the weekend in question. Defendant's trial counsel, as he testified at the postconviction hearing, felt he did not have a valid basis for objecting to Tilbury's testimony or to the admission of his prior statements. In his testimony Tilbury admitted giving a statement to the police but claimed he was on drugs at the time. (The state persuasively rebutted this by eliciting testimony from the two investigating officers that Tilbury not only did not appear to be under the influence of any drugs but expressly said to them that he had not used drugs since he got out of drug treatment.) Since defense counsel did

not object or ask for a limiting instruction, the trial court did not give a contemporaneous limiting instruction informing the jury that the statement could be used only for impeachment purposes rather than substantively. However, the trial court did give such an instruction as part of the final · instructions, saying that evidence of prior inconsistent statements could be used only in determining the believability of a witness.

Defendant testified and denied that Tilbury was present and denied that any sexual assault occurred. The testimony that Tilbury was not there that weekend was contradicted not only by A.'s testimony but by the testimony of K., Tilbury's sometimes girl friend.[2]

As we said at the outset, we believe this case is controlled by our decision in *State v. Ortlepp*, 363 N.W.2d 39 (Minn.1985). In *Ortlepp*, a criminal damage case, Steichen, an accomplice of the defendant, gave a statement incriminating himself and the defendant. The state called Steichen at trial and he admitted giving the statement but claimed the statement was false. Defense counsel did not object to the prosecutor's use of the statement to impeach Steichen's testimony. In fact, Ortlepp's counsel conceded the admissibility of the statement for that purpose. However, Ortlepp, citing the lack of objection, later claimed on appeal that his attorney had failed to represent him effectively. We rejected this argument, concluding that Ortlepp had no legitimate cause to complain about the admission of the evidence for impeachment purposes because the evidence was in fact admissible as substantive evidence under Minn.R.Evid. 803(24).

Defendant in this case would have a legitimate cause to complain about the admission of the prior statements of Tilbury for impeachment purposes if the evidence was inadmissible substantively. As we said in *Ortlepp*, "[A] problem arises when a prosecutor calls a witness who has given

---

1. Tilbury gave both a recorded statement and an unrecorded statement.

2. In a statement in his own handwriting given the officers at the time of his first interview

Tilbury wrote, "I remember Joe [defendant] Jeff and Todd drinking beer at the kithen (sic) tabel (sic)."

a prior statement implicating the defendant, but that witness has since retracted the statement and signified an intent to testify in defendant's favor if called by the prosecutor. If the prosecutor is permitted to call this witness and use the prior statement for impeachment purposes, there is a large risk that the jury, even if properly instructed, will consider the prior statement as substantive evidence." 363 N.W.2d at 42–43. We have sometimes called this problem "the *Dexter* problem," referring to our decision in *State v. Dexter,* 269 N.W.2d 721 (Minn.1978), where we discussed the problem in detail.

However, as we made clear in *Ortlepp,* if the prior statement is admissible as substantive evidence of the defendant's guilt, then "the *Dexter* problem is not present and defendant has no legitimate cause to complain." 363 N.W.2d at 43.

In *Ortlepp* we held that the prior statement by Steichen, although disavowed by Steichen at trial, was admissible substantively under Minn.R.Evid. 803(24), the so-called "catch all exception":

> First, there is no confrontation problem presented by the admission of the statement as substantive evidence, since Steichen testified, admitted making the prior statement, and was available for cross-examination by defense counsel. *See California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970); *State v. Gustafson,* 266 N.W.2d 878, 879 (Minn.1978). Second, since Steichen admitted making the prior statement, there was no real dispute over whether he made it or over what it contained. Indeed, the prior statement was taped. Third, the statement was against Steichen's penal interest, a fact that increases its reliability.[3] Fourth, the statement was consistent with all the other evidence the state introduced, evidence

which pointed strongly toward both defendant and Steichen's guilt.

363 N.W.2d at 44 (footnote added).

In our opinion, *Ortlepp* is in point. Here, as in *Ortlepp,* defense counsel did not object at trial, but defendant later claimed ineffective assistance of counsel. Here, as in *Ortlepp,* the prosecutor called the accomplice for the purpose of getting his statement before the jury. Here, as in *Ortlepp,* defendant has no legitimate cause to complain *if* the accomplice's statement, which was admitted for impeachment purposes, in fact was admissible substantively.

We conclude that Tilbury's statement was admissible substantively under Minn. R.Evid. 803(24). First, there is no confrontation problem presented by the admission of the prior statement as substantive evidence, because Tilbury testified, admitted making a prior statement, and was available for cross-examination by defense counsel. Second, while Tilbury claimed he was on drugs at the time of the prior statement, the state persuasively rebutted this by presenting evidence that Tilbury not only did not appear to be under the influence of any drugs but expressly told them that he had not used drugs since he got out of drug treatment. Third, Tilbury's statement to the police clearly was an inculpatory statement that was against his penal interest, a factor that dramatically increases its reliability. Fourth, the statement not only was consistent with but closely corroborated A.'s statement to the police. Fifth, Tilbury's demeanor at the time he made the statement supports the conclusion that the statement was reliable. Although there was no formal compliance with the notice provision of subsection 24 of the rule, it seems clear that defense counsel had notice because he referred to Tilbury and his testimony in his opening statement.[4]

---

3. The statement, though against Steichen's penal interest, was not independently admissible under Minn.R.Evid. 804(b)(3), dealing with statements against interest, because the rule presupposes the unavailability of the declarant.

4. In a footnote in *Ortlepp,* 363 N.W.2d at 44, n. 1, we quoted the following statement by Judge Hand which bears repeating here:
   > The possibility that the jury may accept as the truth the earlier statements in preference to those made upon the stand is indeed real, but we find no difficulty in it. If, from all that the jury see of the witness, they conclude

As in *Ortlepp*, since Tilbury's prior statement was admissible as substantive evidence under Minn.R.Evid. 803(24), defendant has no ground for complaint about its admission for impeachment purposes.

Reversed and judgment of conviction reinstated.

that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered under oath in court.
*DiCarlo v. United States,* 6 F.2d 364, 368 (2nd Cir.1925) (Learned Hand, J.), *cert. denied,* 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925).