STATE of Minnesota, Respondent,

v.

Andre ROBINSON, Appellant.

No. A04–840.

Court of Appeals of Minnesota.

July 19, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Davi E. Axelson, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; STONEBURNER, Judge; and DIETZEN, Judge.

## OPINION

DIETZEN, Judge.

In this third-degree assault case, appellant challenges a victim's out-of-court statements admitted by the district court, the validity of the district court's jury instructions, and the imposition of a double upward departure from the presumptive guidelines sentence. We conclude that the out-of-court statements were admissible as non-hearsay or, in the alternative, as exceptions to the hearsay rule. We also conclude that the district court's jury instructions were adequate. But because the double upward departure from the

presumptive sentence violates the rule of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), we affirm in part, reverse in part, and remand for resentencing.

## FACTS

In the early morning of April 12, 2003, appellant Andre Robinson, the father of two children with Fountaine Thompson, arrived at Thompson's townhouse. After opening the door for Robinson, Thompson became angry because she thought Robinson had been with another woman. The two argued, and Thompson ultimately received a "blow-out" fracture in the orbit of her eye. There are two explanations for the cause of the fracture. First, according to the testimony of the attending nurse at the hospital, Thompson stated that Robinson slapped her with an open hand to her face. This statement was replicated on a physical-assessment questionnaire completed by the nurse at the emergency room. The questionnaire also indicated that Robinson had grabbed Thompson before but had not hurt her.

Second, about a month after the incident, Thompson met with the prosecuting attorney and said that her injury was caused by accident; at trial, she admitted that she told the nurse that Robinson hit her but testified she did so because she was angry and wanted to get Robinson in trouble. According to this version of events, Thompson went into the bathroom to stop the argument with Robinson. After some time, Thompson peered out of the door to see if Robinson was in the hallway. At that moment, Robinson pushed the bathroom door and struck Thompson in the eye.

In May 2003, the state charged Robinson with third-degree assault and interference with an emergency call.[1] At a pretrial hearing, Robinson objected to the admission of Thompson's statements to the nurse implicating him in the assault. The state argued that the statements should be considered as non-hearsay because they were statements of identification, or, in the alternative, the statements were admissible subject to the medical diagnosis or catchall exceptions to the hearsay rule. The district court found that the statements were not statements of identification or admissible under the catchall exception, but admitted the statements pursuant to the medical diagnosis exception.

After a jury trial, Robinson was convicted of third-degree assault. In February 2004, the district court sentenced Robinson to 48 months in prison, a double upward departure from the presumptive sentence of 24 months. *See* Minn. Sent. Guidelines IV–V. The district court stayed the prison sentence for five years and placed Robinson on probation. This appeal followed.

## ISSUES

I. Are Thompson's statements admissible as non-hearsay or as exceptions to the hearsay rule?

II. Did the district court abuse its discretion by failing to instruct the jury on the definition of intent?

III. Does Robinson's sentence violate the Sixth Amendment right to a jury trial under the rule announced in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)?

1. The district court subsequently dismissed the charge of interference with an emergency call.

## ANALYSIS

### I.

#### A. *Hearsay*

A district court exercises discretion when it makes evidentiary rulings, and those rulings will not be reversed absent an abuse of that discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003). "On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *Id.*

Hearsay is an out-of-court statement that is offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Hearsay is generally not admissible at trial. Minn. R. Evid. 802. An out-of-court statement offered to prove the truth of the matter asserted is admissible, however, if it is covered by an exception to the hearsay rule or if it is exempted from the definition of hearsay. *See* Minn. R. Evid. 803 (providing exceptions when declarant's availability is immaterial); Minn. R. Evid. 804 (providing exceptions when declarant is unavailable); Minn. R. Evid. 801(d) (listing statements that are not hearsay). Generally, hearsay evidence is admissible if it is reliable and trustworthy such that cross-examination would be unnecessary. *See* Minn. R. Evid. 803(24) (allowing hearsay if statement has "equivalent circumstantial guarantees of trustworthiness"); Minn. R. Evid. 102 (noting that purpose of rules of evidence is to ascertain truth).[2]

#### B. *Medical Diagnosis or Treatment Hearsay Exception*

The district court admitted Thompson's statements pursuant to the medical diag-nosis or treatment exception to the hearsay rule. The exception admits hearsay "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Minn. R. Evid. 803(4). Robinson argues that the district court erroneously admitted Thompson's statements under this exception because the statements identified Robinson as the abuser and were not relevant to Thompson's diagnosis or treatment for the "blow-out" fracture. We agree.

Historically, caselaw has concluded that statements concerning the cause of an injury are inadmissible under the medical diagnosis or treatment exception:

> Care should ... be exercised in distinguishing between statements made to a physician relating to conditions and symptoms of the injury or ailment for which treatment is sought and statements made to the physician as to the cause of the injury or the circumstances concerning the manner in which the accident occurred. Such statements are inadmissible.

*Peterson v. Richfield Plaza, Inc.*, 252 Minn. 215, 228, 89 N.W.2d 712, 721–22 (1958); *see also United States v. Beaulieu*, 194 F.3d 918, 921 (8th Cir.1999) ("[A] declarant's statements relating the identity of the individual allegedly responsible for [her] injuries or condition would seldom, if ever, be reasonably pertinent to treatment or diagnosis.") (quotation omitted); *State*

**2.** The United States Supreme Court recently held that testimonial hearsay statements are only admissible under the Sixth Amendment's Confrontation Clause if the declarant is unavailable for trial and if the criminal defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). Here, *Crawford* is not applicable because Thompson was available for trial and was cross-examined by Robinson's counsel.

*v. Bellotti,* 383 N.W.2d 308, 312 (Minn.App. 1986) ("[S]tatements regarding who caused injuries generally are not admissible because they are irrelevant to medical diagnosis and treatment."), *review denied* (Minn. Apr. 24, 1986), *abrogated in part on other grounds by State v. Larson,* 453 N.W.2d 42 (Minn.1990), *cert. granted, vacated on other grounds by Larson v. Minnesota,* 498 U.S. 801, 111 S.Ct. 29, 112 L.Ed.2d 7 (1990), *aff'd on reh'g, State v. Larson,* 472 N.W.2d 120 (Minn.1991).

Courts have created an exception to this principle for child-abuse cases, on the theory that the child's "statement identifying the abuser ... is pertinent to treatment." *Larson,* 453 N.W.2d at 47. The state argues that *State v. Richards,* 552 N.W.2d 197 (Minn.1996), is dispositive of the issue because the case extended rule 803(4) to apply to domestic-abuse cases. We disagree. In *Richards,* an out-of-court statement was made by a murder victim, who told a medical counselor that she was afraid of the defendant because he beat her. *Id.* at 209. The supreme court did not announce the extension of the medical diagnosis or treatment exception to domestic-abuse cases but only concluded that the district court had a "solid legal basis" for admitting the statement under rule 803(4). *Id.* We conclude that *Richards* is distinguishable because Thompson's statements identifying her assailant were not "made for purposes of medical diagnosis or treatment" of the "blow-out" fracture to her eye. *See* Minn. R. Evid. 803(4).

Here, the district court observed that a domestic-abuse victim is equivalent to a child-abuse victim, so medical treatment is based on identifying the source of the injury in order to prevent further domestic abuse. But there is not a child-abuse victim in this case and *Richards* is unavailing because its holding is distinguishable. We conclude that the prohibitions of *Peterson* and *Bellotti* apply to these facts. Thompson's statements to the nurse identifying Robinson as the abuser were not reasonably pertinent to her medical diagnosis or treatment. Thompson's statements clearly fit within the category of statements made regarding the cause or manner in which the injury occurred. Accordingly, Thompson's statements as to the cause of her injury are inadmissible under rule 803(4), the medical diagnosis and treatment hearsay exception.

## C. *Prior Statements of Identification*

The state next argues that Thompson's statements are not hearsay under the identification exemption contained in Minn. R. Evid. 801(d)(1)(C). A statement under this provision is not hearsay if the declarant testifies at trial, is subject to cross-examination, and the statement is "one of identification of a person made after perceiving the person, if the court is satisfied that the circumstances of the prior identification demonstrate the reliability of the prior identification." *Id.* This provision is similar to federal rule 801(d)(1)(C), but Minnesota's rule further requires that a court must be satisfied as to the reliability of the prior identification before it may be admitted into evidence. Minn. R. Evid. 801(d)(1)(C).

Many of the state and federal cases on this rule are in the context of pre-trial identifications, such as a photographic line-up. *See, e.g., United States v. Owens,* 484 U.S. 554, 562–63, 108 S.Ct. 838, 844, 98 L.Ed.2d 951 (1988) ("To judge from the House and Senate Reports, Rule 801(d)(1)(C) was in part directed to the very problem here at issue: a memory loss that makes it impossible for the witness to provide an in-court identification or testify about details of the events underlying an earlier identification."); *United States v.*

*Elemy,* 656 F.2d 507, 508 (9th Cir.1981) ("The reasons for admitting identification statements as substantive evidence are that out-of-court identifications are believed to be more reliable than those made under the suggestive conditions prevailing at trial, and the availability of the declarant for cross-examination eliminates the major danger of hearsay testimony."); *State v. Henderson,* 620 N.W.2d 688, 698–99 (Minn.2001) (holding rule 801(d)(1)(C) inapplicable to witness's "drive-by" identification used as substitute for line-up because identification procedure was unreliable).

Robinson argues that rule 801(d)(1)(C) is strictly limited to line-ups and photographic identifications. But the language of the rule does not provide such limits. Committee comments to the rule provide some guidance by referring to the rule's rationale as stemming "from the belief that if the original identification procedures were conducted fairly, the prior identification would tend to be more probative than an identification at trial." Minn. R. Evid. 801 1989 comm. cmt. Here, we have an emergency-room procedure that requires a patient or hospital employee to complete a physical-assessment questionnaire. One of the purposes of the questionnaire is to provide a domestic-abuse assessment; the questionnaire contains a boilerplate question that asks patients "[h]ave you ever been hit, kicked, pushed or otherwise hurt or mistreated by someone important to you?" We observe that the questionnaire serves a purpose similar to a photographic identification, in that patients, under a uniform procedure, are requested to identify assailants who have mistreated them. There is nothing in the record suggesting that Thompson's statements of identification were not made pursuant to fairly conducted procedures.

The state further argues that *State v. Hogetvedt,* 623 N.W.2d 909 (Minn.App. 2001), *review denied* (Minn. May 29, 2001), is similar factually. In *Hogetvedt,* an assault victim originally told police officers, medical personnel, and her children that defendant was the assailant. *Id.* at 912. At trial, although the victim did not deny making the earlier statements, she claimed that defendant did not assault her. *Id.* This court determined that the original statements were non-hearsay identifications under rule 801(d)(1)(C). *Id.* at 913 ("In this case, [the victim's] statements to her daughter and to [the police officer] identified appellant as her assailant and described the event soon after the assault occurred. These statements are not hearsay.").

Because this court reversed the district court on the ground of prejudicial police testimony, *id.* at 916, Robinson argues that the *Hogetvedt* language is dictum. But federal cases also support the state's argument. In *Elemy,* the Ninth Circuit observed that the non-hearsay identification rule applies to "the instance where before trial the witness identifies the defendant and then because of fear refuses to acknowledge his previous identification." 656 F.2d at 508. Similar to our case, the court concluded that when a witness recants, the "prior identification can only be introduced into evidence by a third party who was present at the original identification." *Id.* The Seventh Circuit has held that where a witness testified at trial that he had previously identified a defendant who had extorted money from him, but recanted the statement in his testimony, the pretrial statement was admissible under federal rule 801(d)(1)(C). *United States v. O'Malley,* 796 F.2d 891, 899 (7th Cir.1986).

We conclude that the reasoning of *Hogetvedt, Elemy,* and *O'Malley* applies to

Thompson's statements. Thompson testified at trial, was subject to cross-examination concerning the statements, and made statements of identification after perceiving Robinson, the father of her children. Minn. R. Evid. 801(d)(1)(C) also requires the district court to be satisfied "that the circumstances of the prior identification demonstrate the reliability of the prior identification." Here, the district court stated at the pretrial hearing that Thompson's statements contained "certain indicia of trustworthiness." And the district court observed that Thompson's statements to the nurse were corroborated by her statements to the police. While the district court did not make a formal written finding of reliability under rule 801(d)(1)(C), the district court's reliability observations are on the record, and those conclusions are sufficient for purposes of appellate review.

The reliability of an identification should be analyzed in light of the facts and circumstances that exist at the time an identification is made and should not be colored by later events. *See* Minn. R. Evid. 801 1989 comm. cmt. (stating that a prior identification is more probative than an identification at trial, if procedures surrounding initial identification were conducted fairly); *cf. Idaho v. Wright*, 497 U.S. 805, 819, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990) (holding that trustworthiness of statement admitted pursuant to catchall exception must be shown only from circumstances surrounding the making of the statement). Based on the record, the district court properly concluded that the identification had adequate indicia of trustworthiness. The identification was orally made on the morning of the incident to an attending nurse in the emergency room as well as on a physical-assessment questionnaire. The nurse testified that the appearance of Thompson's injury was consistent with her statements and that she was experiencing

intense pain. There is nothing in the record to indicate that at the time her statements were given in the emergency room they were not reliable. Consequently, we conclude that Thompson's statements were admissible under rule 801(d)(1)(C), the non-hearsay identification provision.

### D. *Catchall Hearsay Exception*

█ The state also argues that Thompson's statements are admissible under *State v. Ortlepp*, 363 N.W.2d 39 (Minn. 1985). Because the *Ortlepp* decision was based on Minn. R. Evid. 803(24), the hearsay catchall exception, *id.* at 40, we review the rule to determine whether the statements are admissible on that basis. Rule 803(24) admits statements

> not specifically covered by any of the foregoing [hearsay] exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

"For hearsay to qualify under this provision, it must be established that there is some need for the evidence and that the evidence has guarantees of trustworthiness equivalent to the specific exceptions set out in Minn. R. Evid. 803." *Kronebusch v. MVBA Harvestore Sys.*, 488 N.W.2d 490, 495 (Minn.App.1992), *review denied* (Minn. Oct. 20, 1992).

We conclude that Thompson's statements are admissible under rule 803(24). First, the statements were offered as evidence of a material fact, namely, that Rob-

inson assaulted Thompson. Second, the statements are more probative than any other evidence that the state could marshal because Thompson was the only witness to the incident. Third, because we have already stated that the district court rightly concluded that the statements contain indicia of trustworthiness, admission of the statements serves the interests of justice. Finally, because Thompson's statements were the subject of a pretrial hearing, Robinson received sufficient notice of the state's intention to offer the statements into evidence. *See* Minn. R. Evid. 803(24) (requiring sufficient notice to adverse party before evidence may be admitted).

We have recently concluded that *Ortlepp* is the applicable standard for evaluating a district court's decision to admit hearsay evidence under the catchall exception. *State v. Plantin,* 682 N.W.2d 653, 658 (Minn.App.2004), *review denied* (Minn. Sept. 29, 2004); *see also Oliver v. State,* 502 N.W.2d 775, 778 (Minn.1993) (applying *Ortlepp* to catchall exception analysis).[3] Although it is not apparent whether the *Ortlepp* standard is in addition to a rule 803(24) analysis, we conclude that the statements meet the requirements of both tests.

■ In *Ortlepp,* the supreme court established a four-part test for admitting hearsay statements under rule 803(24). 363 N.W.2d at 44. First, the declarant must be available for cross-examination regarding the statement. *Id.* Second, there can be no dispute as to whether the declarant actually made the statement. *Id.* Third, the statement must be sufficiently reliable; for example, the fact that a statement is against a declarant's penal interest increases its reliability. *Id.* Alternatively, if a declarant makes a statement contrary to another interest, such as a statement hostile to the prosecution, reliability may be enhanced. *See State v. Whiteside,* 400 N.W.2d 140, 146 (Minn.App.1987) (admitting out-of-court statement of defendant's girlfriend incriminating defendant, although girlfriend was uncooperative at trial), *review denied* (Minn. Mar. 18, 1987). Fourth, the statement must be consistent with all other evidence that the state introduced. *Ortlepp,* 363 N.W.2d at 44.

■ Here, the district court concluded that the statements did not fit the catchall exception. After examining the *Ortlepp* test, we disagree with the district court's analysis. First, Thompson testified at trial and was available for cross-examination regarding her statements. Second, Thompson admitted making the statements to the nurse in her testimony. Third, although her statements were not against her penal interest, they were against her relationship interest with Robinson. In this aspect, Thompson's statements are similar to statements ruled admissible by this court in *Whiteside. See* 400 N.W.2d at 146 (admitting out-of-court statements of defendant's girlfriend under catchall exception incriminating defendant in criminal sexual conduct). Finally, the statements were consistent with all other evidence the state introduced at trial, which included testimony from the attending nurse and police reports that recorded statements Thompson made implicating Robinson. We therefore conclude that

---

3. The Supreme Court's decision in *Wright* examined Idaho's catchall exception to the hearsay rule, but we have stated a preference for analyzing this issue under the *Ortlepp* framework, because the *Wright* decision featured an unavailable declarant, which raised a confrontation clause issue. *See Plantin,* 682 N.W.2d at 658 n. 1 (observing that case involving available declarant is similar to *Oliver,* 502 N.W.2d at 777, which applied the *Ortlepp* test).

Thompson's statements were also admissible under rule 803(24), the catchall exception to the hearsay rule.

■ In the end, although we disagree with the reasoning the district court used in admitting Thompson's out-of-court statements, we affirm the conviction because the statements are admissible on other grounds. *Cf. Katz v. Katz,* 408 N.W.2d 835, 839 (Minn.1987) ("[W]e will not reverse a correct decision simply because it is based on incorrect reasons.").

## II.

### *Jury Instructions*

■ Robinson next argues that the district court erred by failing to instruct the jury on the definition of intent. District courts are afforded "considerable latitude" in the selection of language for jury instructions. *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). Jury instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). Because Robinson did not object to the jury instructions at trial, we determine whether the instructions constituted plain error. Under a plain-error analysis, Robinson must show: (1) error; (2) that was plain; and (3) that affected substantial rights. *See State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998). If those three prongs are met, we may correct the error only if it seriously affects the fairness or integrity of the judicial proceedings. *Id.*

■ Robinson was charged with assault in the third degree. Minn.Stat. § 609.223, subd. 1 (2002) ("Whoever assaults another and inflicts substantial bodily harm may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than

$10,000, or both."). The district court gave the following instructions to the jury:

The elements of the offense are these. First, that the defendant assaulted Fountaine Thomas. Assault means to commit an act with the intent to cause fear of immediate bodily harm or death or intentionally inflict or attempt to inflict bodily harm.

Second, the defendant inflicted substantial bodily harm on Fountaine Thompson. Substantial bodily harm means bodily harm that involves a temporary but substantial disfigurement; causes a temporary but substantial loss or impairment of the function of any bodily member or organ; or causes a fracture of any bodily member.

It's not necessary for the State to prove that the defendant intended to inflict substantial bodily harm but only that the defendant intended to commit the assault.

Third, the defendant's act took place on or about April 12, 2003 in Hennepin County.

If you find that each of these elements has been proved beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proved beyond a reasonable doubt, defendant is not guilty.

This instruction is virtually identical to Minnesota's standard jury instruction. *See* 10 *Minnesota Practice,* CRIMJIG 13.16 (1990).

Robinson argues that intent is an essential element of assault, so the district court should have included the definition for intent codified in state law. *See* Minn.Stat. § 609.02, subd. 9(3)-(4) (2002) (defining intent as defendant having purpose to cause result or belief that act, if successful, will cause result). We disagree. The district court followed the standard jury instructions, which adequately explain the ele-

ments of third-degree assault. *See Peterson v. State,* 282 N.W.2d 878, 881 (Minn. 1979) ("[D]etailed definitions of the elements to the crime need not be given in the jury instructions if the instructions do not mislead the jury or allow it to speculate over the meaning of the elements.").

There is no indication in the record that the jury was misled or speculated over the issue of intent. And the district court's jury instructions did not seriously affect the fairness and integrity of the proceeding. We conclude that the district court's jury instructions did not constitute plain error.

## III.

### *Robinson's Sentence*

■ Robinson argues that his sentence, which includes a double upward departure, violates *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Robinson's appeal of his sentence under the Minnesota Sentencing Guidelines presents a constitutional issue, which we review de novo. *State v. Wright,* 588 N.W.2d 166, 168 (Minn.App.1998).

■ In *Blakely,* the Supreme Court applied the rule from *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2536. That rule states that besides the fact of a prior conviction, a judge is proscribed from finding additional facts—facts not admitted by the defendant nor submitted to the jury—to impose a sentence above the statutory maximum. *Id.* at 2537. Minnesota courts have concluded that *Blakely* applies to upward durational sentencing departures under the guidelines. *See State v. Shattuck,* 689 N.W.2d 785, 786 (Minn.2004) (per curiam); *State v. Saue,* 688 N.W.2d 337, 341

& n. 1 (Minn.App.2004), *review granted* (Minn. Jan. 20, 2005); *State v. Conger,* 687 N.W.2d 639, 644 (Minn.App.2004), *review granted* (Minn. Dec. 22, 2004).[4] Because Robinson's appeal was pending at the time *Blakely* was released, he is entitled to the application of *Blakely.* *See O'Meara v. State,* 679 N.W.2d 334, 339–40 (Minn.2004).

■ The district court sentenced Robinson to 48 months in prison, a double upward departure from the presumptive sentence of 24 months for a defendant convicted of third-degree assault with a criminal-history score of four. *See* Minn. Sent. Guidelines IV. The district court based the double upward departure on a number of factors—such as Robinson's history of violence, the presence of two children during the assault, Thompson's vulnerability, the utility of a longer prison sentence for punishment purposes, and the belief that Robinson was a dangerous person—that were not admitted by Robinson and were not submitted to the jury. Therefore, Robinson's sentence violates the rule of law enunciated in *Blakely.* *See* 542 U.S. at ——, 124 S.Ct. at 2536.

The state argues that *Blakely* does not apply to a sentence imposed under the state guidelines because the guidelines should be construed as advisory, not mandatory. As support, the state cites the United States Supreme Court's recent decision in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *Booker,* the Court released a two-part opinion that concluded that *Blakely* applied to the federal sentencing guidelines. *Id.* at 755. The Court first observed that the federal guidelines "are mandatory and binding on all judges." *Id.* at 750. In the second half of the opinion, the Court crafted a remedy that rendered

---

**4.** The supreme court granted review in *Saue* and *Conger* but stayed additional processing

of those matters pending a final decision in *Shattuck.*

the federal guidelines "effectively advisory." *Id.* at 757.

 The state argues that Minnesota's sentencing guidelines should also be construed as advisory, which would eliminate the *Blakely* problem with Robinson's sentence. But recent caselaw has made it clear that Minnesota's guidelines are mandatory. *See Shattuck,* 689 N.W.2d at 786 ("[I]mposition of the presumptive sentence is mandatory absent additional judicial findings under the legislatively-created Guidelines regime...."); *Saue,* 688 N.W.2d at 343 ("[T]he presumptive sentence is not merely a suggestion, but a sentence that must be imposed unless the procedures for departure are followed.").

Because the supreme court has concluded that the Minnesota sentencing guidelines are mandatory, *Booker* does not apply to this case. The decision to render Minnesota's guidelines advisory rests with the supreme court or the legislature, not with this court. *Cf. Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App.1987) (observing that task of extending existing law should fall to supreme court or legislature, not court of appeals), *review denied* (Minn. Dec. 18, 1987).

The state next argues that even if the guidelines are mandatory, the proper remedy is to remand for a new sentencing hearing and not to automatically impose the presumptive sentence. The state cites *State v. Hagen,* 690 N.W.2d 155, 160 (Minn.App.2004), for this proposition. But in *Hagen,* after we held that *Blakely* applied to a defendant's sentence, we merely mentioned that the impaneling of a new jury was a possible remedy. *Id.* ("But the appropriate remedy, including the possible impaneling of a jury to determine the sentencing issues, has not been fully litigated

here and must be determined in the first instance by the district court.").

The state also argues that because sentencing is a judicial function, this court has the discretion to remand for a new sentence before a jury empaneled for the specific purpose of sentencing. *See State v. Misquadace,* 644 N.W.2d 65, 68 (Minn. 2002) ("[T]he imposition of a sentence in a particular case ... is a judicial function."). In that regard, the supreme court in *Shattuck* directed the parties to submit supplemental briefs on the question of, assuming the state sentencing guidelines are unconstitutional per *Blakely,* whether the court "has the inherent authority to authorize the use of sentencing juries and a bifurcated trial process." *Shattuck,* 689 N.W.2d at 786. Consequently, we decline to address this issue. We therefore conclude that *Blakely* is applicable to Robinson's sentence and remand for proceedings not inconsistent with this opinion.

## DECISION

The district court properly admitted Thompson's statements into evidence and instructed the jury on third-degree assault. We therefore affirm the conviction of third-degree assault. Because the district court's imposition of a 48–month prison sentence on Robinson violates the rule enunciated in *Blakely,* we reverse and remand for resentencing.

**Affirmed in part, reversed in part, and remanded.**