*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0665**


State of Minnesota,
Respondent,

vs.

Albert Michael Openshaw,
Appellant.


**Filed April 13, 2015
Affirmed
Halbrooks, Judge**


Mahnomen County District Court
File No. 44-CR-12-419

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Darlene Rivera Spalla, Mahnomen County Attorney, Mahnomen, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and

Larkin, Judge.

**UNPUBLISHED OPINION**

**HALBROOKS**, Judge

Appellant Albert Michael Openshaw challenges his conviction of first-degree arson, arguing that the district court abused its discretion by admitting into evidence a witness's hearsay statement. Because we conclude that the district court's erroneous admission of the hearsay statement was harmless, we affirm.

**FACTS**

On June 9, 2012, the Mahnomen County Sheriff's Office received a report of a fire in an apartment. When the responding deputy arrived at the scene, he observed Openshaw outside the main entrance to the apartment building and heard him mumble that a room in the building was on fire. The deputy asked Openshaw if he "did it," and Openshaw said that he did. The deputy went to the apartment, found the sprinkler system on, and observed smoke. The deputy detained Openshaw. Shortly thereafter, J.G., who lived in the apartment building, approached the deputy and gave him information regarding Openshaw. The deputy then accompanied J.G. to her apartment, where she gave a recorded statement.

The deputy reviewed the apartment building's security footage and identified Openshaw entering and re-entering the apartment unit where the fire occurred. The apartment belonged to Openshaw's girlfriend. After an investigation, the fire marshal concluded that the fire was intentionally set by Openshaw. The state charged Openshaw with first-degree arson, in violation of Minn. Stat. § 609.561, subd. 1 (2010), second-

degree burglary, and trespassing. The state later dismissed the burglary and trespass counts.

In a pretrial motion, the state moved the district court to allow "upon laying of proper foundation with testimony, admission of a statement made by [J.G.] immediately after the fire was contained with regard to events that allegedly occurred just prior to the fire alarms and sprinkler system being activated." The district court deferred its ruling on whether to admit J.G.'s recorded statement until trial. During J.G.'s trial testimony, the state again requested that the district court admit J.G.'s statement, and Openshaw objected on the basis of hearsay.

The state first argued that the statement fell under the present-sense-impression exception to the hearsay rule. Openshaw responded that, to be admissible, the statement needed to qualify as a prior consistent statement or a prior inconsistent statement, but that J.G. had not yet testified to the facts contained in the prior recorded statement. As a result, the statement was neither consistent nor inconsistent with her testimony. In response, the state argued that the statement was admissible to refresh J.G.'s recollection.

The district court admitted J.G.'s statement as a prior consistent statement under Minn. R. Evid. 801(d)(1)(B), but noted that the statement could also be admitted under the residual hearsay exception articulated in Minn. R. Evid. 807. The statement was marked as exhibit 7, and the audio recording was played for the jury.

During deliberations, the jury asked to hear J.G.'s recorded statement again, and the statement was replayed for the jury. The jury returned a guilty verdict. The district

3

court sentenced Openshaw to prison for a period of 117 months and imposed restitution in the amount of $141,308.99. Openshaw now appeals.

## D E C I S I O N

Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted" and is generally not admissible at trial. Minn. R. Evid. 801(c), 802. But an out-of-court statement may be admissible if it is covered by an exception to the hearsay rule or is exempted from the definition of hearsay. *State v. Robinson*, 699 N.W.2d 790, 794 (Minn. App. 2005), *aff'd*, 718 N.W.2d 400 (Minn. 2006). "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Carridine*, 812 N.W.2d 130, 141 (Minn. 2012) (quotation omitted). The appellant bears the burden of establishing that the district court abused its discretion and that he was thereby prejudiced. *State v. Griffin*, 834 N.W.2d 688, 693 (Minn. 2013). If the district court erroneously admits an out-of-court statement, the question becomes "whether the error was harmless." *State v. Robinson*, 718 N.W.2d 400, 407 (Minn. 2006). We will not reverse the district court's evidentiary ruling "unless the error substantially influenced the jury's verdict." *Carridine*, 812 N.W.2d at 141 (quotation omitted). Here, the district court admitted J.G.'s statement as a prior consistent statement and also referenced the residual hearsay exception.

**Prior Consistent Statement**

Under Minn. R. Evid. 801(d)(1)(B), a witness's prior statement that is consistent with her testimony at trial "is admissible as nonhearsay evidence if the statement is helpful to the trier of fact in evaluating the witness's credibility, and if the witness

4

testifies at trial and is subject to cross-examination about the statement." *State v. Bakken*, 604 N.W.2d 106, 108-09 (Minn. App. 2000), *review denied* (Minn. Feb. 24, 2000). Before the statement may be admitted, the district court must first make a "threshold determination" that the witness's credibility has been challenged. *Id.* at 109; *see also State v. Nunn*, 561 N.W.2d 902, 908-09 (Minn. 1997) (holding that "before the statement can be admitted, the witness' credibility must have been challenged"). The district court must then determine whether the out-of-court statement was consistent with the witness's trial testimony. *Bakken*, 604 N.W.2d at 109. And the district court must evaluate whether the statement would "be helpful to the trier of fact in evaluating the witness's credibility." *Id.*

Here, the district court indicated that Openshaw's counsel was "going to be talking about [J.G.'s] ability to perceive things on the night in question, so her credibility is going to be challenged, from what I understand." But Openshaw's counsel did not comment on J.G.'s credibility in his opening statement and had not yet cross-examined J.G. prior to the admission of her prior recorded statement. Therefore, J.G.'s credibility had not yet been challenged and the statement should not have been admitted as a prior consistent statement.

In addition, "when a witness' prior statement contains assertions about events that have not been described by the witness in trial testimony, those assertions are not helpful in supporting the credibility of the witness and are not admissible under this rule." Minn. R. Evid. 801(d)(1)(B) 1989 comm. cmt. Here, J.G. testified that she did not remember (1) what happened while Openshaw was in her apartment on the night of the fire,

(2) saying anything to Openshaw after the fire, or (3) what she told the deputy. But J.G.'s recorded statement contained assertions that (1) Openshaw had come to J.G.'s apartment to use her phone to call his girlfriend; (2) about 30 seconds before the fire alarm went off, he told her to get her kids downstairs "because he had a bad feeling"; (3) after evacuation of the building, she asked Openshaw what he did and he said that he fell asleep with a cigarette in his girlfriend's apartment; and (4) Openshaw had accused his girlfriend of cheating on him and that he was trying to get back at his girlfriend. J.G.'s recorded statement contained assertions that she did not describe in her testimony at trial. Therefore, the recorded statement was not "consistent" with her trial testimony.

Because the statement was admitted prior to any challenge to J.G.'s credibility and because the statement was not consistent with her trial testimony, the statement was not "helpful to the trier of fact in evaluating the witness's credibility." *See Bakken*, 604 N.W.2d at 109. J.G.'s statement does not qualify as a prior consistent statement under rule 801(d)(1)(B).

**Residual Hearsay Exception**

After ruling that the statement was admissible as a prior consistent statement, the district court stated, "I also believe it would fall under the 807 exception as well." This exception permits the admission of hearsay statements that do not fall under the usual hearsay exceptions enumerated in rules 803 and 804. But prior to admission, the district court must determine that (1) "the statement is offered as evidence of a material fact," (2) "the statement is more probative on the point for which it is offered than any other evidence" that can be procured through reasonable efforts, (3) "the general purposes of

6

these rules [of evidence] and the interests of justice will best be served by admission of the statement," and (4) the proponent of the statement made known to the adverse party its intent to offer the statement sufficiently in advance of trial. Minn. R. Evid. 807. Importantly, a party seeking to admit a statement under this exception must also establish, under the totality of the circumstances, that the statement has "circumstantial guarantees of trustworthiness" equivalent to the other hearsay exceptions. *Robinson*, 718 N.W.2d at 408. District courts "should make findings explicitly on the record unless there is a waiver" supporting their evidentiary rulings. *State v. DeRosier*, 695 N.W.2d 97, 105 (Minn. 2005). Here, the residual hearsay exception is not a valid basis for admitting J.G.'s statement because the district court did not make any findings regarding the factors listed above, particularly regarding the trustworthiness of J.G.'s statement, and nothing in the record affirmatively demonstrates that J.G.'s statement had "circumstantial guarantees of trustworthiness."

**Harmless Error**

We review objected-to erroneous evidentiary rulings for harmless error. *State v. Vang*, 774 N.W.2d 566, 576 (Minn. 2009). Erroneous admission of evidence is harmless if there is no "reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Post*, 512 N.W.2d 99, 102 n.2 (Minn. 1994). Part of the harmless-error test is to determine whether the statement was otherwise admissible. *Robinson*, 718 N.W.2d at 407-10. Even if we disagree with the district court's reasoning for admitting J.G.'s statement, we will affirm the conviction if the statements are

7

admissible on other grounds. *See Robinson*, 699 N.W.2d at 799. We therefore will address other bases for admission of the statement.

**Present-Sense Impression**

A declarant's prior statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter" is not hearsay if the declarant testifies and is subject to cross-examination concerning the statement. Minn. R. Evid. 801(d)(1)(D). "The subject matter of the statement must describe an event or condition at or near the time the declarant perceives the event or condition." Minn. R. Evid. 801(d)(1)(D) 1989 comm. cmt. A statement is contemporaneous for purposes of this rule so long as "there is little time to consciously fabricate a story." *State v. Pieschke*, 295 N.W.2d 580, 583 (Minn. 1980). Here, J.G. made her statement at 4:50 a.m. The fire occurred more than one hour earlier, at 3:40 a.m. We conclude that the statement does not qualify as a present-sense impression. An hour between the incident and J.G.'s recorded statement was enough time for her to fabricate a story. In addition, J.G.'s statement does not "describe an event or condition" because it merely describes what Openshaw said to J.G. with some context.

**Excited Utterance**

"A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" may be admissible as an exception to the hearsay rule. Minn. R. Evid. 803(2). "The rationale for this exception stems from the belief that the excitement caused by the event eliminates the possibility of conscious fabrication, and insures the trustworthiness of the statement."

8

*State v. Bauer*, 598 N.W.2d 352, 366 (Minn. 1999) (quotation omitted).  Here, nothing in the record indicates that J.G. was "under the stress of excitement" caused by the fire when she gave the recorded statement to the deputy.  Therefore, the statement does not fall under the excited-utterance exception to the hearsay exception.

**Prior Inconsistent Statement**

In order to qualify as a prior inconsistent statement, the statement needs to be "given under oath subject to the penalty of perjury."  Minn. R. Evid. 801(d)(1)(A).  J.G.'s statement was not given under oath.  Therefore, the statement does not qualify as a prior inconsistent statement.

**Recorded Recollection**

The state argues that the statement was admissible under the recorded-recollection hearsay exception.  Minn. R. Evid. 803(5) defines a recorded recollection as:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.  If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

But J.G.'s statement was not merely "read into evidence"—it was received as an exhibit.  Under the rule, a recorded recollection may not be received as an exhibit unless it is offered by the adverse party.  In this case, the state, not the adverse party, offered the exhibit.  Therefore, the statement was not admissible under the recorded-recollection

exception to the hearsay rule. We conclude that J.G.'s statement is hearsay and is not admissible under any exception to the hearsay rule.

**Substantial Influence on the Verdict**

We next consider whether the district court's error prejudiced Openshaw. "Reversal is warranted only when the error substantially influences the jury's decision." *Nunn*, 561 N.W.2d at 907. Openshaw argues that J.G.'s statement was the only piece of evidence that the jurors requested to review during deliberations, demonstrating its substantial influence on the jury. But the district court noted during trial that one juror could not hear the recording of J.S.'s statement. The district court told the jury that the statement could be replayed at a different time. This could explain why the jury asked to replay the statement—not because the jury was substantially influenced by the statement, but because one juror had not heard the statement when it was played during trial. Pursuant to Minn. R. Crim. P. 26.03, subd. 20(2)(b), the statement was played in open court.

In addition, regardless of J.G.'s statement, the surveillance video and the fire marshal's expert testimony provided more than sufficient evidence upon which to convict Openshaw. *See State v. Miller*, 754 N.W.2d 686, 704 (Minn. 2008) (holding that the district court's erroneous admission of a hearsay statement was harmless error because "there was more than sufficient other evidence from which the jury could have inferred [guilt]"). The fire marshal testified that the fire was "intentionally set" and "caused by the last person that was in the apartment prior to the fire alarm system going off." The fire marshal opined that Openshaw set the fire because he was seen "in the [surveillance]

10

video leaving the apartment five minutes prior to the alarm system going off." And the surveillance video showed Openshaw entering the apartment unit at approximately 3:31 a.m., exiting the apartment at 3:35 a.m., and the fire alarm going off five minutes later, at 3:40 a.m. The video does not support Openshaw's testimony that he fell asleep with a lit cigarette because it shows that he was only in the apartment for four minutes. In addition, J.G.'s statement does not contain an admission from Openshaw that he intentionally set the fire. J.G.'s statement indicates that Openshaw had a "bad feeling" and told J.G. that she should get her children downstairs and that Openshaw was upset with his girlfriend and was trying to get back at her for cheating on him. While this could imply a motive for intentionally starting the fire, J.G.'s statement also includes Openshaw saying that the fire was started accidentally.

Openshaw has not met his burden of demonstrating that there was a reasonable possibility that the evidentiary error significantly affected the verdict. Therefore, the district court's error was harmless.

**Affirmed.**

11