STATE of Minnesota, Respondent,

v.

Anthony John HARLIN, Appellant.

No. A08–1424.

Court of Appeals of Minnesota.

Aug. 25, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, MN, for respondent.

Marie L. Wolf, Interim Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; CONNOLLY, Judge; and BJORKMAN, Judge.

## OPINION

CONNOLLY, Judge.

Following a jury trial, appellant was convicted of one count of second-degree assault in violation of Minn.Stat. § 609.222, subd. 2 (2008), and one count of false imprisonment in violation of Minn.Stat. § 609.255, subd. 2 (2008). He challenges his convictions, arguing that (1) to sustain a conviction under Minn.Stat. § 609.222, subd. 2, it is necessary for the dangerous weapon to inflict substantial bodily harm, (2) the evidence is insufficient to support the jury's determination that the victim suffered substantial bodily harm, (3) the district court's failure to answer a question by the jury is reversible error, and (4) the district court committed plain error by failing to provide the jury with a definition of intent. We affirm.

## FACTS

On January 6, 2007, appellant Anthony John Harlin physically assaulted M.P., his girlfriend of five years. The attack was precipitated by a phone call that M.P. received that night, which appellant apparently assumed was from an ex-boyfriend. In response to questioning from appellant, M.P. handed him the phone. But the call had been disconnected by the time he received the phone. M.P. sensed that appellant was angry and, fearful of what actions he might take, attempted to leave his home.

M.P. went to her car, but before she could make it out of the garage, appellant grabbed her from the car by her neck, threw her to the ground, and dragged her back into his house. M.P. again attempted to leave the house, this time through the front door, but before she could do so, appellant grabbed her by the neck and arm and dragged her to the basement.

Appellant then procured a hammer and mallet and began to question M.P. When asked about this, M.P. testified that:

> [f]or each question if he didn't believe the answer I gave him he would either hit me with the mallet or the hammer in either my back or head.... I remained crouched down as best I could. I remember a lot of swearing and a lot of yelling, telling me I was a f——ing liar, that he should f——ing kill me.... I remember that after one time that I got up to my knees, just, you know, rose up just so I was actually up on my knees at this point, not crouched down, and I remember saying to him, "please stop, this hurts." And he kept asking questions and if he didn't believe my answers he would hit me.

This interrogation went on for approximately 45 minutes. After appellant had finished beating M.P., he wrapped an electrical cord around her neck and used it to suspend her off the ground until she began to lose consciousness. Fearful for her life, M.P. managed to calm appellant down by stating that she loved him. Eventually, appellant ceased his assault, stating that he "was not going to kill you tonight. There's too much blood. If I was going to do this it wouldn't be tonight. There's too much blood, there's too much evidence."

The following day, when M.P. was finally able to leave appellant's home, she met with her parents and immediately went to an emergency room to have her wounds treated. Her father called the police from the hospital. Appellant was arrested and charged with one count of second-degree assault in violation of Minn.Stat. § 609.222, subd. 2, and one count of false imprisonment in violation of Minn.Stat. § 609.255, subd. 2. Following a jury trial, he was convicted on both counts. This appeal follows.

## ISSUES

I. Under Minn.Stat. § 609.222, subd. 2, which defines the elements of assault in the second degree with a dangerous weapon, must the dangerous weapon cause a victim's substantial bodily harm?

II. Is the evidence sufficient to support the jury's determination that the victim suffered substantial bodily harm?

III. Was the district court's failure to answer a question by the jury reversible error?

IV. Did the district court commit plain error by failing to provide the jury with a definition of intent?

## ANALYSIS

**I. Minn.Stat. § 609.222, subd. 2, which defines the elements of assault in the second degree with a dangerous weapon, does not require that the dangerous weapon be used to inflict substantial bodily harm.**

Minn.Stat. § 609.222, subd. 2, provides that "[w]hoever assaults another with a dangerous weapon and inflicts substantial bodily harm" is guilty of second-degree assault. Appellant argues that, under this subdivision, a defendant may be convicted of second-degree assault only if the "substantial bodily harm" was inflicted by the use of the dangerous weapon. Respondent argues that it is only necessary that the "substantial bodily harm" occur during the course of the assault involving a dangerous weapon, regardless of whether the "substantial bodily harm" was caused by the use of the dangerous weapon. This question presents an issue of first impression for this court.

At the outset, we note that the parties do not dispute that the hammer and mal-

let, as they were used by appellant, constitute dangerous weapons. In his brief, appellant concedes that he used a dangerous weapon when assaulting M.P., and that M.P. suffered injury as a result of the dangerous weapon's use: "[M.P.] undoubtedly suffered bodily harm as a result of the use of the dangerous weapon." Regarding the harm suffered by M.P., appellant specifically concedes that a dangerous weapon caused the "bruises on [M.P.'s] back and the cut to her scalp." Appellant's argument is focused on the contention that to sustain a conviction under section 609.222, subdivision 2, it must be proven that the substantial bodily harm was caused solely and exclusively by the dangerous weapon. Under this theory, it would be necessary to precisely determine the source of each injury suffered by the victim so that it can be decided if those injuries that were imposed by the dangerous weapon amount to substantial bodily harm. We note the difficulty such an inquiry would present in cases such as this one, where a victim suffers injuries from a dangerous weapon and from sources that are not considered dangerous weapons. Furthermore, this approach would be especially problematic in cases where injuries overlap each other.

■ Questions of statutory interpretation are reviewed de novo. *State v. Thompson*, 754 N.W.2d 352, 356 (Minn. 2008). The best method of divining the legislatures intention is to rely on the plain language of the statute. *State v. Iverson*, 664 N.W.2d 346, 350–51 (Minn.2003). And when the language is clear, this court is bound to give effect to that language. *Id.* at 351. But if a criminal law is ambiguous, the rule of lenity requires this court to construe the law narrowly. *State v. Maurstad*, 733 N.W.2d 141, 148 (Minn.2007). However, "this court will not invoke principles of lenity when the statute at issue is not ambiguous." *State v. Campbell*, 756 N.W.2d 263, 275 (Minn.App.2008), *review denied* (Minn. Dec. 23, 2008).

Here, the statute's language is clear: all that is required for a conviction under subdivision two is an assault that results in substantial bodily harm *and* involves the use of a dangerous weapon. Appellant would have us read into Minn.Stat. § 609.222, subd. 2, a requirement that is not explicitly found in the statute. Specifically, appellant urges us to read the following bracketed language into the statute: "Whoever assaults another with a dangerous weapon and inflicts substantial bodily harm [with that dangerous weapon]" is guilty of assault in the second degree. Our legislature could have easily inserted this language into the statute but refrained from doing so. Neither will this court. *See State v. Johnson*, 743 N.W.2d 622, 626 (Minn.App.2008) (stating that this court cannot add to a statute what the legislature purposely omits or inadvertently overlooks).

Moreover, the statutory framework for assault clearly indicates a scheme of increasing criminal penalties for increasingly severe criminal conduct. Regarding first-degree assault, Minn.Stat. § 609.221 (2008) provides that a defendant is guilty of that offense if he either "assaults another and inflicts great bodily harm," or "assaults a peace officer or correctional employee by using or attempting to use dangerous force against the officer or employee." First-degree assault allows for the most severe penalty for an assault. Defendants convicted of first-degree assault "may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $30,000, or both." *Id.*, subd. 1.

Regarding second-degree assault, Minnesota Statutes detail two different circumstances constituting the offense; one carries a more severe penalty than the

other. The circumstance allowing for the more severe penalty occurs when a defendant uses a dangerous weapon and inflicts substantial bodily harm during the commission of the assault. Minn.Stat. § 609.222, subd. 2. Defendant's who violate Minn.Stat. § 609.222, subd. 2, "may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both." *Id.* The circumstance providing for the lesser penalty occurs when a defendant uses a dangerous weapon without *inflicting substantial bodily harm.* Minn.Stat. § 609.222, subd. 1 (2008). Defendant's who violate Minn.Stat. § 609.222, subd. 1, "may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $14,000, or both." *Id.*

Finally, regarding third-degree assault, the statute provides for a less severe penalty for an assault that results in substantial bodily harm without the use of a dangerous weapon. Minn.Stat. § 609.223, subd. 1 (2008). Defendants who violate Minn.Stat. § 609.223, subd. 1 "may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both." *Id.*

 Under this statutory framework, the criminal penalties increase as the severity of the criminal conduct increases. A holding that the dangerous weapon must be used to inflict substantial bodily harm in order to sustain a conviction under section 609.222, subdivision 2, would result in the imposition of the same penalties for conduct that results in substantial bodily harm regardless of the fact that a dangerous weapon was used during the commission of one of the assaults. Such a holding ignores the legislature's obvious attempt to impose increasingly severe criminal penalties for increasingly severe criminal conduct. Given the statute's plain language, and a statutory framework that imposes

increasingly severe penalties as the severity of the criminal conduct increases, we hold that Minn.Stat. § 609.222, subd. 2, does not require that the dangerous weapon be used to inflict the substantial bodily harm. To sustain a conviction under Minn.Stat. § 609.222, subd. 2, it is only necessary that the "substantial bodily harm" occur during the course of an assault involving a dangerous weapon, regardless of whether the "substantial bodily harm" was in fact caused by the dangerous weapon.

## II. The evidence is sufficient to support the jury's determination that the victim suffered substantial bodily harm.

When reviewing a sufficiency of the evidence claim, this court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989); *see also State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989) (stating this court views evidence in the light most favorable to the verdict). This court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State,* 684 N.W.2d 465, 476–77 (Minn.2004).

Substantial bodily harm is a "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which causes a fracture of any bodily member." Minn.Stat. § 609.02, subd. 7a (2008). As an initial matter, appellant argues that the substantial bodily harm must result from the dangerous weapon's use. As the analysis in the previous section indicates, this is the wrong

framework to apply to this issue. The correct inquiry is whether the assault itself resulted in substantial bodily harm, not whether the dangerous weapon was used to cause it. In this case, there is sufficient evidence that M.P. suffered substantial bodily harm.

■ As a result of appellant's attack, M.P. received a cut on her head that required four staples to close, leaving her with a permanent scar. M.P. also suffered chipped teeth in the attack that will require repeated dental care for the remainder of her life. *See State v. Bridgeforth,* 357 N.W.2d 393, 394 (Minn.App.1984) (stating that "the loss of a tooth is a permanent loss of the function of a bodily member" and that the loss of a tooth provides a sufficient factual basis for a plea of guilty to first-degree assault), *review denied* (Minn. Feb. 6, 1985); *see also State v. Moore,* 699 N.W.2d 733, 737 (Minn.2005) (explaining that a jury must determine whether the loss of a tooth constitutes great bodily harm). In addition, M.P. suffered bruising on 15% of her back. These bruises left a permanent white discoloration on her back. M.P. testified that in the days following the attack, she had difficulty dressing herself and needed assistance putting on her clothes and lying down to sleep. M.P. also suffered an injury to her toe and further bruising on her hand that, while not leaving any permanent scars, caused her a significant amount of pain and numbing in one of her fingers. Finally, M.P.'s injuries were so severe that she was forced to miss three weeks of work.

When viewed in the light most favorable to the verdict, there is sufficient evidence for a jury to reasonably conclude that M.P. suffered substantial disfigurement and, therefore, substantial bodily harm as the result of appellant's attack. But even if we were to limit our analysis to the injuries that appellant concedes were inflicted by a dangerous weapon, specifically the scar on M.P.'s head and the bruising to her back, there would still be sufficient evidence for a jury to reasonably conclude that M.P. suffered substantial disfigurement and, therefore, substantial bodily harm as the result of appellant's attack. *See State v. McDaniel,* 534 N.W.2d 290, 293 (Minn. App.1995) (holding that two scars, one less than an inch in length on the victim's chest and one six centimeters long and on his neck constituted *great* bodily harm), *review denied* (Minn. Sept. 20, 1995).

### III. The district court's failure to answer a question by the jury was not reversible error.

During deliberations, the jury asked "Does substantial bodily harm have to come strictly from a dangerous weapon or can it be a combined effect of the injuries?" The district court declined to answer this question. Appellant contends the failure to do so is reversible error. *See State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988) ("[J]ury instructions must be viewed in their entirety to determine whether they fairly and adequately explained the law of the case."). We disagree that this was reversible error.

Appellant's argument on this issue is premised upon the claim that the substantial bodily harm must have been inflicted by a dangerous weapon. But, as previously stated, it is whether the assault as a whole caused the substantial bodily harm that is the relevant inquiry. Thus, even if the jury took into account the wounds inflicted by appellant without the mallet and hammer's use, it did so properly under the statute, and the district court did not abuse its discretion by declining to instruct them to do otherwise. *See State v. Murphy,* 380 N.W.2d 766, 772 (Minn.1986) (stating that a district court has "the discretion to decide whether to amplify previ-

ous instructions, reread previous instructions, or give no response at all)."

## IV. The district court's failure to provide the jury with a definition of intent did not affect appellant's substantial rights.

Appellant argues the district court committed reversible error by failing to provide the jury with a definition of intent. Because appellant did not object to the instructions at trial, we review the unobjected-to instruction under the plain-error standard. *See State v. Vance*, 734 N.W.2d 650, 655 (Minn.2007). Under this standard, appellant must establish that there was "(1) error; (2) that was plain; and (3) that affected substantial rights." *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). An error is plain when it is "clear" or "obvious." *Id.* "[A]n error affects substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *Vance*, 734 N.W.2d at 656.

■ District courts are allowed "considerable latitude" in the selection of language for the jury instructions. *State v. Baird*, 654 N.W.2d 105, 113 (Minn.2002). Jury instructions are reviewed "as a whole to determine whether they fairly and adequately explain the law." *State v. Evans*, 756 N.W.2d 854, 874 (Minn.2008). And "jury instructions must define the crime charged and explain the elements of the offense to the jury." *Vance*, 734 N.W.2d at 656. While appellant argues the district court should have defined "intent" for the jury, the word intent has a common meaning, "and the definition provided by CRIMJIG does not greatly increase the jury's understanding of the phrase." *State v. Duke*, 335 N.W.2d 511, 515 (Minn.1983); *see also State v. Robinson*, 699 N.W.2d 790, 799–800 (Minn.App.2005) (holding that it is not plain error to fail to define intent

in the instructions in an assault case), *aff'd in part, rev'd in part and remanded on other grounds*, 718 N.W.2d 400 (Minn. 2006).

■ Here, the district court instructed the jury that "whoever does an act with intent to cause fear in another person of immediate bodily harm or death or intentionally inflicts or attempts to inflict bodily harm upon another is guilty of a crime." Appellant argues the failure to define intent in this context is reversible error because his defense was that he struck M.P. with a mallet with the intent "to get her off of him and that he did not intend to harm her." Thus, appellant argues that the jury should have been instructed that the requisite intent was the intent to inflict bodily harm.

■ Even assuming the district court's failure to define intent was plain error, it did not affect appellant's substantial rights. "[A] jury may infer that a person intends the natural and probable consequences of his actions...." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn.1997). In this case, a jury could have easily inferred that appellant intended to inflict substantial bodily harm upon M.P. when he slammed her to the ground and repeatedly struck her with a mallet and a hammer over the course of 45 minutes. *See Duke*, 335 N.W.2d at 515 ("Defense counsel did make an argument that defendant did not intend to kill the victim, only to shoot her, but that was a weak argument given ... evidence that defendant pointed the gun and fired it at the victim's head at close range.").

## DECISION

Because (1) Minn.Stat. § 609.222, subd. 2, which defines the elements of assault in the second degree with a dangerous weapon, does not require that the dangerous

weapon actually be used to inflict the substantial bodily harm, (2) the evidence is sufficient to support the jury's determination that the victim suffered substantial bodily harm, (3) the district court's failure to answer a question by the jury is not reversible error, and (4) the district court's failure to provide the jury with a definition of intent did not affect appellant's substantial rights, appellant's convictions are upheld.

**Affirmed.**