*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0747**

State of Minnesota,
Respondent,

vs.

Curtis Wayne Regguinti,
Appellant.

**Filed May 4, 2015
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CR-12-3627

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Hudson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his conviction of aiding and abetting first-degree assault, arguing that (1) the district court committed plain error by failing to define "intent" for

the jury, (2) the prosecutor committed multiple forms of misconduct, (3) a different judge was improperly substituted at sentencing, and (4) the district court abused its discretion by denying a downward departure at sentencing. We affirm.

**FACTS**

On December 28, 2011, B.M.-O. hosted a party at his home. Approximately ten people attended, including his girlfriend, J.A., appellant Curtis Regguinti, Jr., and Regguinti's girlfriend, L.J. Everyone was drinking alcohol, and at some point Regguinti fell asleep on a couch. Several other partygoers entered the room where Regguinti was sleeping, and J.A. tugged on Regguinti's underwear to wake him up. When he awoke, Regguinti punched the person closest to him—L.E. The two fought briefly, but B.M.-O. broke them up. Regguinti was angry and left the house.

Approximately two hours later, Regguinti returned with his cousin; his father, Curtis Regguinti, Sr.; and his father's girlfriend. As Regguinti approached the house, J.A. told him he could not come back inside. Regguinti hit her, and she swung back. Regguinti placed J.A. in a choke hold, and she screamed. B.M.-O. ran outside and punched Regguinti in the face. Then he and Regguinti "started going at it." Some other people came running up behind B.M.-O., struck him, and he fell to the ground, unconscious. When he came to, Regguinti had him pinned down and was trying to punch him in the face. B.M.-O. looked up and saw either Regguinti's father or his cousin nearby, raising his foot "like he was sort of winding up to kick." B.M.-O. tried to shield himself with his hands, but someone kicked him and he again lost consciousness. As B.M.-O. lay on the ground immobile, J.A. saw Regguinti punching him and Regguinti's

2

father and cousin kicking him, "all beating [B.M.-O.] up at the same time." After about a minute, a vehicle pulled up, and Regguinti, his father, his cousin, and his father's girlfriend ran to the vehicle and fled the scene.

B.M.-O. was treated for multiple injuries, including skull fractures, bladder injuries, and swelling around both eyes. He was unable to walk for two or three weeks, and he suffered migraines and headaches for several months. He has permanent hearing loss in his right ear and vision loss in his right eye.[1]

Regguinti was charged with aiding and abetting first- and third-degree assault, and he asserted a self-defense claim. Regguinti Sr. was also charged with aiding and abetting first-degree assault based on the incident with B.M.-O. The two men were tried separately.

At Regguinti's trial, immediately before opening statements, the state dismissed the third-degree-assault charge. Regguinti subsequently clarified that his self-defense claim pertained only to the dismissed charge, and he did not seek a self-defense jury instruction. Nonetheless, Regguinti testified that he was the victim, not the assailant, at the house party. He testified that when he was awakened on the couch, he believed he was being robbed and briefly lashed out at L.E., but then was assaulted by L.E. and B.M.-O., suffering a broken jaw and injuries to his nose and eye. Regguinti testified he returned to the party later because he was concerned about his girlfriend, and he and J.A. began arguing outside. He testified that B.M.-O. started walking toward him, and his

---

[1] Regguinti stipulated that these injuries constitute great bodily harm.

3

father hit B.M.-O. He stated that B.M.-O. fell down and hit his head, but he never saw anyone kick B.M.-O. and never personally struck him. The jury found Regguinti guilty.

Following Regguinti's trial, the trial judge was transferred to a different division of the court and another judge was assigned to conduct Regguinti Sr.'s trial and to sentence Regguinti. Regguinti requested a downward durational or dispositional sentencing departure. The district court denied both requests and imposed the presumptive 86-month sentence. Regguinti appeals.

## DECISION

### I. The district court did not commit plain error by failing to define "intent."

We review unobjected-to jury instructions for plain error. *See State v. Watkins*, 840 N.W.2d 21, 27 (Minn. 2013). Under that standard, an appellant must demonstrate (1) error; (2) that is plain; and (3) that affected his substantial rights. *Id.* at 28 (citing *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998)). Plain error requires reversal only if "the fairness, integrity, or public reputation of the judicial proceeding is seriously affected." *State v. Barrientos–Quintana*, 787 N.W.2d 603, 611 (Minn. 2010) (quotation omitted).

The state was required to prove that Regguinti committed first-degree assault or "intentionally aided" another in committing that offense. Minn. Stat. § 609.05, subd. 1 (2010). Our supreme court has explained that a person intentionally aids another's criminal conduct when he (1) knows that his alleged accomplices are going to commit a crime and (2) intends his presence or actions to further the commission of that crime. *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). Failure to define the phrase

4

"intentionally aids" for a jury is plain error. *See State v. Kelley*, 855 N.W.2d 269, 275, 277 (Minn. 2014).

The district court instructed the jury that Regguinti intentionally aided a crime committed by another if he "knew his alleged accomplices were going to or were committing a crime," he "intended that his presence and actions aid the commission of a crime," and his "presence and actions did aid the . . . commission of the crime." Regguinti argues that the district court erred by not also defining the term "intent." We disagree.

The district court gave almost exactly the instruction mandated in *Milton*, and nothing in the language of that decision suggests that any further instruction on "intent" is necessary. To the contrary, the word intent "has a common meaning." *State v. Harlin*, 771 N.W.2d 46, 52 (Minn. App. 2009), *review denied* (Minn. Nov. 17, 2009). For that reason, we have repeatedly held that a district court does not plainly err by failing to define the word intent for the jury. *See id.*; *State v. Robinson*, 699 N.W.2d 790, 799-80 (Minn. App. 2005), *aff'd in part, rev'd in part and remanded on other grounds*, 718 N.W.2d 400 (Minn. 2006). The jury would have gained little insight from an additional instruction explaining that "'with intent that' means that the actor either has a purpose to do the thing or cause the result specified, or believes that the act, if successful, will cause that result." *See* 10 *Minnesota Practice*, CRIMJIG 7.10 (2006). Accordingly, the district court did not commit error, plain or otherwise, by not providing such an instruction.

Moreover, the failure to define "intent" did not impair Regguinti's substantial rights. The jury was presented with two markedly different versions of how B.M.-O.

5

sustained his injuries. But the jury obviously believed the state's evidence that Regguinti pinned B.M.-O. down and punched him repeatedly while Regguinti Sr. and Regguinti's cousin kicked him. Because intent is the only plausible inference from that joint conduct, an instruction defining intent would not have altered the jury's verdict. On this record, we conclude that Regguinti's plain-error challenge to the jury instructions fails.

**II.    The prosecutor did not commit prejudicial misconduct.**

Regguinti argues that the prosecutor engaged in multiple forms of misconduct. He did not object to all of the alleged instances of misconduct, and the parties dispute the appropriate standard of review. We agree that our review "depends on whether an objection was raised at the time of the alleged error." *State v. Yang*, 774 N.W.2d 539, 559 (Minn. 2009). We review objected-to misconduct under a two-tiered harmless-error test and apply a modified plain-error test to claims of unobjected-to misconduct. *Id.* But our "primary concern" when addressing any allegation of prosecutorial misconduct is "whether such misconduct deprived the defendant of his right to a fair trial." *State v. Jones*, 753 N.W.2d 677, 686 (Minn. 2008). In this respect, the two standards of review do not materially differ. *State v. Vance*, 734 N.W.2d 650, 660 n.8 (Minn. 2007) (noting similarity between harmless-error standard and third prong of plain-error review). We need not address the merits of a prosecutorial misconduct claim if the alleged misconduct was harmless beyond a reasonable doubt. *See State v. McDonough*, 631 N.W.2d 373, 389 (Minn. 2001). Accordingly, we focus our analysis on the issue of prejudice.

Regguinti asserts four instances of prosecutorial misconduct. First, he argues that the prosecutor improperly elicited a police officer's opinion as to his guilt by asking

6

"what, if any, conclusion" the officer's investigation had led him to draw about Regguinti's "role in the assault," to which the officer replied, "[t]hat he was involved in the assault." Second, Regguinti contends that the prosecutor improperly shifted the burden of proof during closing argument by stating that "there's no defense of self-defense here," but "I want to talk about it briefly because we did discuss [it] in voir dire." Third, Regguinti argues that the prosecutor improperly highlighted that he did not call L.J. as a witness by telling the jury that it "heard from everyone out there that night who saw what happened with the exception of [L.J.]." Fourth, Regguinti asserts that the prosecutor improperly appealed to the passions and prejudices of the jury by asking the jury to consider whether disagreements with how police investigated this case "should mean that [B.M.-O.] and that the State of Minnesota should not get justice in this case."

While we are not convinced that the prosecutor acted improperly in any of these instances, we conclude that any error was harmless beyond a reasonable doubt. The challenged conduct was not pervasive. *See State v. Hohenwald*, 815 N.W.2d 823, 835 (Minn. 2012) (considering pervasiveness of misconduct). The officer's testimony that he believed Regguinti was "involved" in the assault came during the middle of a proper direct examination and played no role in the prosecutor's closing argument. And the challenged aspects of the closing argument form only a small portion of a lengthy argument (spanning 40 pages of transcript) during which the prosecutor appropriately focused on identifying and explaining the evidence. By contrast, the evidence against Regguinti was strong, based on the consistent testimony of multiple witnesses that thoroughly established the elements of aiding and abetting first-degree assault. *See id.*

7

(considering the strength of the evidence against the defendant). Moreover, both the district court and defense counsel properly reminded the jury that it is the sole judge of credibility and that the state must prove guilt beyond a reasonable doubt. *See id.* (considering the opportunity to mitigate the effect of improper suggestions). On this record, we conclude that Regguinti is not entitled to relief based on alleged prosecutorial misconduct.

### III. Regguinti was not prejudiced by being sentenced by a substitute judge.

A substitute judge may preside at sentencing if the trial judge "is unable to preside due to death, illness or other disability." Minn. R. Crim. P. 26.03, subd. 14(2). Regguinti argues that it was improper for a substitute judge to sentence him because the trial judge was not unavailable as set out in rule 26. But reversal is warranted only if the alleged error impaired Regguinti's substantial rights. *See* Minn. R. Crim. P. 31.01; *see also State v. Rodriguez*, 754 N.W.2d 672, 683-84 (Minn. 2008) (applying harmless-error analysis to alleged errors in sentencing procedure). No such impairment is apparent from this record.

The sentencing judge was amply familiar with the case and with Regguinti. She presided over Regguinti Sr.'s trial, hearing evidence as to precisely the same offense for which she sentenced Regguinti. She also observed Regguinti testify at his father's trial. And she consulted with the trial judge about Regguinti's sentence. Regguinti argues that this consultation indicates that the sentencing judge improperly prejudged his sentence. We are not persuaded. The sentencing judge thoroughly reviewed the presentence investigation report, read letters from Regguinti's family, and invited Regguinti to

present his own comments during the sentencing hearing. He has not identified any evidence or arguments that the sentencing judge failed to consider. Because Regguinti was sentenced by a judge thoroughly familiar with the facts of his case and all of the factors relevant to his sentencing requests, we conclude that he is not entitled to relief based on the fact that the judge did not preside at his trial.

**IV.    The district court did not abuse its discretion by denying a downward sentencing departure.**

A district court must impose the presumptive sentence unless "identifiable, substantial, and compelling circumstances" justify a downward departure. *State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013) (quotation omitted), *review denied* (Minn. Sept. 17, 2013). We review a district court's decision to grant or deny a departure from the presumptive sentence for abuse of discretion, *State v. Geller*, 665 N.W.2d 514, 516 (Minn. 2003), and will reverse a presumptive sentence only in rare cases, *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

**Dispositional departure**

The appropriateness of a dispositional departure depends on the defendant as an individual, "on whether the presumptive sentence would be best for him and for society." *State v. Heywood*, 338 N.W.2d 243, 244 (Minn. 1983). A district court must "deliberately" consider circumstances for and against departure. *State v. Mendoza*, 638 N.W.2d 480, 483 (Minn. App. 2002), *review denied* (Minn. Apr. 16, 2002). But it is not obligated to depart even if mitigating factors are present. *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006).

9

Regguinti argues that the district court abused its discretion by denying his request for a downward departure because he is "amenable to probation." We disagree. A defendant's amenability to probation, as determined by his age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends or family, is a prime consideration in considering a downward dispositional departure. *See State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). But "merely being amenable to probation" is not sufficient to stay a presumptively executed sentence. *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014). A defendant must be *particularly* amenable to probation, distinguishing himself from most others, to present the substantial and compelling circumstances required for departure. *Id.*

The district court expressly considered the *Trog* factors and found that they weigh somewhat in Regguinti's favor. But the district court determined that they do not add up to a substantial and compelling reason warranting departure from the presumptively executed sentence. The district court also noted that the probation officer who conducted Regguinti's presentence investigation recommended an executed sentence. That another district court presented with this record may have granted a dispositional departure does not invalidate Regguinti's sentence. *See Bertsch*, 707 N.W.2d at 668. We conclude that the district court did not abuse its discretion by imposing an executed sentence.

**Durational departure**

Unlike a dispositional departure, the appropriateness of a durational departure depends only on the nature of the offense. *State v. Behl*, 573 N.W.2d 711, 713 (Minn. App. 1998) (citing *State v. Chaklos*, 528 N.W.2d 225, 228 (Minn. 1995)), *review denied*

10

(Minn. Mar. 19, 1998). "[O]ffender-related factors do not support durational departures." *State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013). A district court may grant a downward durational departure "if the defendant's conduct is significantly less serious than that typically involved in the commission of the offense." *State v. Mattson*, 376 N.W.2d 413, 415 (Minn. 1985).

Regguinti argues that the district court failed to thoroughly analyze his request for a downward durational departure and improperly focused on the severity of B.M.-O.'s injuries. We are not persuaded. First, Regguinti's only argument in favor of a departure was that he did "not act[] alone." But acting in concert with others is the very essence of an aiding-and-abetting offense. Second, while the district court's discussion of Regguinti's departure request was not extensive, the court plainly considered whether Regguinti's conduct was significantly less serious than that typically involved in the offense of aiding and abetting first-degree assault, explaining that "[q]uite the opposite is true." The record indicates that Regguinti acted jointly with his father and cousin to repeatedly hit and kick B.M.-O., with, as the district court noted, "devastating" consequences. We conclude that the district court did not abuse its discretion by determining that this conduct does not warrant a downward durational departure.

**Affirmed.**