*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2166**

State of Minnesota,
Respondent,

vs.

Alexander Kenton Edmondson,
Appellant.

**Filed December 7, 2015
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-14-14777

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean E. Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Rodenberg, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant Alexander Kenton Edmondson challenges his conviction of first-degree burglary (assault), arguing that the district court's jury instructions (1) omitted an element

of the crime; (2) erroneously defined "assault;" and (3) violated appellant's right to a unanimous verdict.  We affirm.

## FACTS

Appellant appeals his conviction of assaulting his ex-girlfriend, S.M., inside her mother's apartment.  S.M. lived with her mother in the upper-floor apartment of a triplex apartment building.  The apartment building also contains a main-floor apartment and a basement unit.  For approximately one year, appellant and S.M. lived with S.M.'s mother in the upper-floor apartment.  The couple later moved into the basement unit for six months.  Appellant and S.M. broke up a few months prior to the incident, but appellant continued to live in the basement unit.

On May 24-25, 2014, appellant and S.M. were involved in three separate domestic disputes at the residence and police officers were called on each occasion.  The first incident happened at approximately 8:45 p.m., when a neighbor heard appellant and S.M. arguing and fighting outside, and called the police.  The police arrived and questioned both S.M. and appellant.  S.M. told the police officers she did not need police protection and the officers left.  S.M. drove appellant to his mother's home.

Appellant returned to the apartment building later that night.  At approximately 11:30 p.m., the neighbors on the main level of the apartment building heard appellant and S.M. fighting in the back hallway.  S.M. was screaming and "telling [appellant] 'you got to get out of here.'"  The neighbor opened her apartment door and saw that appellant "had [S.M.] by the hair and she was crying."  The neighbor initially attempted to intervene, but appellant and S.M. went upstairs.  S.M. later called the police when

2

appellant "didn't calm down." Appellant left the apartment and ran down an alley when the police officers arrived. S.M. returned to her mother's upstairs apartment, locked the door, and fell asleep.

An hour later, S.M. awoke and heard appellant banging on the apartment door. S.M. was nervous and scared because she did not want appellant in her mother's apartment. S.M.'s mother was out of town for the weekend and appellant did not have permission to be in the apartment when she was away. Appellant entered the apartment without permission, prompting S.M. to run into the bathroom, lock the bathroom door, and call the police. Appellant stopped banging on the door and S.M., believing that appellant had left the apartment, came out of the bathroom. Appellant was standing by the door in the back hallway. He began chasing S.M. and grabbed her by her wrists and her arms. S.M. ran down the stairs from her apartment toward the main floor. S.M. banged on her neighbor's door and yelled that appellant "broke into [her] mom's house." The neighbor let S.M. inside her apartment and described S.M. as "crying and hysterical."

Minneapolis police officers arrived within five minutes of the emergency call. A police officer observed that S.M. had "marks on her neck that looked a lot like finger marks," as well as fresh bruise marks and scratches on her arm. The police officers determined that appellant assaulted S.M. and placed him under arrest. The state charged appellant with one count of felony burglary in the first degree in violation of Minn. Stat. § 609.582, subd. 1(c) (2014). A jury trial was held and the jury returned a guilty verdict.

The district court committed him to the commissioner of corrections at the Minnesota Correctional Facility in St. Cloud for a period of 36 months. This appeal followed.

**D E C I S I O N**

Appellant raises three issues on appeal. First, appellant argues the district court erred in instructing the jury on the elements of first-degree burglary. Next, appellant claims the district court erred in its instruction on the definition of assault. Lastly, appellant contends the district court erred in its jury-unanimity instruction. We address each argument in turn.

**I.**

Appellant claims the district court committed reversible error by failing to provide a specific jury instruction on the elements of first-degree burglary (assault). The parties disagree on the proper standard of review on appeal. Appellant claims he properly objected to the instruction at trial and argues the harmless-error standard applies while the state argues appellant did not object and the plain-error analysis applies. We determine appellant objected to the jury instruction during the pre-instruction conference, and therefore conclude that the harmless-error standard applies.

"[W]hen a defendant timely objects to a jury instruction, we apply the harmless-error analysis to determine whether the error requires reversal." *State v. Watkins*, 840 N.W.2d 21, 27 n.3 (Minn. 2013); *State v. Lee*, 683 N.W.2d 309, 316 (Minn. 2004). "A jury instruction is erroneous if it materially misstates the applicable law." *State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011). "[W]hen an erroneous jury instruction eliminates a required element of the crime this type of error is not harmless beyond a reasonable

doubt." *State v. Hall*, 722 N.W.2d 472, 479 (Minn. 2006). Appellant bears the burden of showing the error and any resulting prejudice. *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001).

We first address whether the district court erred in its instruction to the jury on the first-degree felony burglary (assault) charge. The state charged appellant under subdivision 1(c), which provides that:

> Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building . . . commits burglary in the first degree . . . if . . . the burglar assaults a person within the building or on the building's appurtenant property.

Minn. Stat. § 609.582, subd. 1(c).

Appellant claims the statute creates a temporal element requiring the state to prove that appellant either intended to commit a crime when he entered the building or committed a crime "while in the building." Appellant argues subdivision 1(c) also creates a location element requiring the state to prove that appellant committed a crime while in the building and, in addition, assaulted a person "within the building or on the building's appurtenant property." Appellant claims the district court's jury instruction required the jury to find the location element but "completely omitted the temporal element." We disagree, and determine that no error occurred.

In a harmless-error analysis, the reviewing court reviews jury instructions in their entirety "to determine if they fairly and accurately reflect the law of the case." *State v. Johnson*, 699 N.W.2d 335, 339 (Minn. App. 2005). The district court followed the

5

pattern jury instruction for first-degree burglary and instructed the jury, in relevant part, that:

> With respect to burglary in the first degree, the statutes of Minnesota provide that whoever enters a building without the consent of the person in lawful possession or remains within a building without the consent of the person in lawful possession, and the person assaults another within the building or on the building's [appurtenant] property is guilty of a crime.
>
> The elements of burglary in the first degree are: First, Mr. Edmondson entered a building without consent of the person in lawful possession or remained within the building without the consent of the person in lawful possession.
>
> . . .
>
> Second, Mr. Edmondson assaulted a person within the building or on the building's [appurtenant] property.
>
> . . .
>
> Third the element for burglary is that Mr. Edmondson's act took place on or about May 25, 2014, in Hennepin County.

*See* 10A *Minnesota Practice*, CRIMJIG 17.04 (articulating first-degree burglary (assault) elements).

Here, the district court instructed the jury that it "must consider these instructions as a whole and regard each instruction in light of all the others." The jury heard testimony that police officers were called to the residence on three separate occasions. S.M. testified she did not want appellant in her mother's apartment. During the third incident, appellant walked into S.M.'s mother's upstairs apartment without permission. S.M. locked herself in the bathroom and begged appellant to leave. When S.M. left the

6

bathroom, appellant chased her and grabbed her wrists and her arms. From this evidence, the jury could reasonably conclude that appellant entered the building without consent and assaulted S.M. within the building. The law requires only that "the charge as a whole convey to the jury a clear and correct understanding of the law of the case." *Johnson*, 699 N.W.2d at 339 (quoting *Barnes v. Northwest Airlines, Inc.*, 233 Minn. 410, 421, 47 N.W.2d 180, 187 (1951)). We hold that the district court's jury instruction conveyed a "clear and correct understanding" of the law and was not erroneous. *Id.*

Appellant also argues the district court failed to distinguish between an assault committed inside S.M.'s apartment unit and an assault committed in the apartment-building's common stairway. Appellant claims that because he was not barred from the common areas of the apartment building, any assault committed in the stairway does not meet the statutory definition of burglary (assault). The district court rejected this argument:

> [T]he burglary statute does speak broadly enough that it would include burglary as entering a building without permission, maybe encountering someone and if that encounter leads to some type of assault that either begins in the building or even involves a person in the [appurtenant] property even perhaps in a common area or a lawn . . . that would satisfy . . . the intent of the burglary statute[.]

Caselaw supports the district court's reasoning. *See State v. Devens*, 852 N.W.2d 255, 259 (Minn. 2014) (stating the word "dwelling" within burglary statute's definitional section is "broad enough to include an apartment hallway"). *State v. Holmes*, 758 N.W.2d 326, 331 (Minn. App. 2008), *aff'd*, 778 N.W.2d 336 (Minn. 2010) ("An assault

committed by a defendant can be used to fulfill *both* the crime element and the assault element of first-degree burglary under Minn. Stat. § 609.582, subd. 1(c).").

Lastly, appellant seeks a new trial on the ground that the jury instruction relieved the state of proving that appellant entered a building "with the intent to commit a crime" or committed a crime "while in the building." The district court is allowed "considerable latitude" in selecting language in the jury instructions and in "determining the propriety of a specific instruction." *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn. 1986) (citations omitted). We therefore review a district court's decision to give a particular jury instruction for an abuse of discretion. *State v. Hall*, 722 N.W.2d 472, 477 (Minn. 2006). A new trial may be granted if the district court abused its discretion in instructing the jury and the injured party properly objected at trial. Minn. R. Civ. P. 59.01(f). However, a new trial will not be granted "when an instruction fairly and correctly state[s] applicable law." *Alevizos v. Metro. Airports Comm'n*, 452 N.W.2d 492, 501 (Minn. App. 1990), *review denied* (Minn. May 11, 1990) (citation omitted). Applying the harmless-error standard of review, we determine the district court did not abuse its discretion by providing the pattern jury instruction on the elements of burglary (assault) and appellant is not entitled to a new trial.

## II.

Appellant argues the district court committed plain error by failing to instruct the jury that it could not convict appellant of first-degree burglary (assault) unless the state proved appellant acted with the purpose of causing S.M. to fear bodily harm or death. Appellant did not raise this objection at trial and we therefore review for plain error. *See*

8

*State v. Harlin*, 771 N.W.2d 46, 52 (Minn. App. 2009) ("Because appellant did not object to the instructions at trial, we review the unobjected-to instruction under the plain-error standard."). Under this standard, appellant must establish that (1) there was an error; (2) the error was plain; and (3) it affected his substantial rights. *Id*. (citation omitted). If these three prongs are satisfied, we assess whether to address the error to ensure fairness and the integrity of the judicial proceedings. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).

The first question is whether an error occurred. Appellant argues the district court erred in its instruction on the definition of assault. "Assault" is defined as:

> (1) an act done with intent to cause fear in another of immediate bodily harm or death; or
>
> (2) the intentional infliction of or attempt to inflict bodily harm upon another.

Minn. Stat. § 609.02, subd. 10 (2014); *see also* 10 *Minnesota Practice*, CRIMJIG 13.01 (defining "assault" as the "intent to cause fear in another person of immediate bodily harm or death" or "intentionally inflict[ing] or attempt[ing] to inflict bodily harm upon another"). "In cases in which a defendant is charged with a degree of an assault, the court may wish to incorporate this instruction directly into the first element of the appropriate elements instruction as a further definition of that element." 10 *Minnesota Practice*, CRIMJIG 13.01 cmt. Here, the district court included the assault definition within its first-degree burglary instruction, as follows:

> An assault is the intentional infliction of bodily harm upon another or intentional attempt to inflict bodily harm

upon another or an act done with the intent to cause fear of immediate bodily harm or death in another.

Appellant contends that the district court erred by failing to define "with intent to," because it "left jurors to speculate about the meaning of the phrase" and created confusion. Appellant relies on *State v. Fleck* to support his argument that assault-fear, in contrast to assault-harm, is a specific-intent crime "requir[ing] the State to prove the defendant committed an act with an additional special mental element—specifically: 'an act done with intent to cause fear in another of immediate bodily harm or death.'" 810 N.W.2d 303, 309 (Minn. 2012) (emphasis omitted) (quoting Minn. Stat. § 609.02, subd. 10(1). Appellant argues the district court erred by failing to instruct the jury that the state had to prove that appellant "acted with specific intent, i.e., that he 'had a purpose to' cause S.M. fear or bodily injury or death.'" Appellant claims that in light of *Fleck*, the district court should have ensured that the jury understood that assault-fear applies only insofar as appellant intended to cause S.M. fear of bodily harm.

We determine the district court did not err in declining to give a specific-intent instruction. This court has previously determined that the word "intent" has a commonly understood meaning, and a district court does not err by declining to provide an instruction that "does not greatly increase the jury's understanding of [a common] phrase." *Harlin*, 771 N.W.2d at 52; *see also State v. Duke*, 335 N.W.2d 511, 515 (Minn. 1983) (holding no plain error and stating that it is "not clear to us that it is an error of 'fundamental law' or 'plain error' for the trial court to fail to define 'intent to kill,' particularly where the definition that would have been given arguably does not add

10

much"); *State v. Robinson*, 699 N.W.2d 790, 799-800 (Minn. App. 2005) (concluding district court's jury instructions did not constitute plain error by failing to define intent in assault case), *aff'd on other grounds*, 718 N.W.2d 400 (Minn. 2006). Because appellant has not met his burden of establishing the district court erred, we do not reach the issue of whether the error was plain or affected appellant's substantial rights.

**III.**

Appellant argues the district court committed plain error by failing to give a specific-unanimity instruction. Appellant claims the district court erred by not instructing the jurors to unanimously agree on (1) what act appellant committed that constituted the crime of burglary (assault); and (2) what type of assault appellant committed. Appellant did not object at trial and this court applies a plain-error standard of review. *See State v. Hayes*, 831 N.W.2d 546, 555 (Minn. 2013) (reviewing unobjected-to jury instructions for plain error).

We first address whether the district court erred by omitting a specific-unanimity instruction. "Jury verdicts in all criminal cases must be unanimous." *State v. Pendleton*, 725 N.W.2d 717, 730 (Minn. 2007) (citing Minn. R. Crim. P. 26.01, subd. 1(5)). "To achieve that end, a jury must unanimously find that the government has proved each element of the offense." *Id*. at 730-31 (quotation omitted). Relying on *State v. Wenthe*, appellant argues the jurors "must unanimously agree on which act the defendant committed" when faced with a single charge, where the state presents evidence of multiple acts that could constitute the charged offense. 845 N.W.2d 222, 229 (Minn. App. 2014), *review granted* (June 25, 2014), *rev'd*, 865 N.W.2d 293 (Minn. 2015).

11

The Minnesota Supreme Court reversed *Wenthe* and determined that it was "not reasonably likely that the district court's failure to provide a specific-unanimity jury instruction significantly affected the verdict" and concluded "that any error did not affect Wenthe's substantial rights." *Id.*, 865 N.W.2d at 301; *see also Pendleton*, 725 N.W.2d at 731 (confirming that a jury "does not have to unanimously agree on the facts underlying an element of a crime in all cases"). In *Schad v. Arizona*, the United States Supreme Court stated that "[w]e have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission[.]" 501 U.S. 624, 631-32, 111 S. Ct. 2491, 2497 (1991). Indeed, *Schad* recognized that "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line," and, therefore, "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Id.* (citations omitted).

This court addressed a similar issue in *State v. Dalbec*, where the defendant argued on appeal that he was deprived of his right to a fair trial because the district court failed to instruct the jury that it must unanimously agree on the act that constituted the offense of domestic assault. 789 N.W.2d 508, 509 (Minn. App. 2010). We determined that the district court did not err by failing to instruct the jury on the doctrine of specific unanimity and affirmed. *Id.* We reasoned that:

> [T]he act of assault is the element of the crime of domestic assault, and an assault can be committed in any of three ways. In theory, each of appellant's acts over the course of [a single day] could be one of these disparate means of accomplishing this element. The jury could agree, therefore,

12

> that appellant intended to assault [the victim] but need not agree on whether the assault was accomplished by causing fear or inflicting or attempting to inflict bodily harm. We conclude that the district court did not plainly err by failing to instruct the jury that it must unanimously determine which action, among several proved, supported the element of assault in a charge of domestic assault.

*Id*. at 513 (footnote omitted).

Precedential authority supports our determination that the district court did not err by failing to provide a specific-unanimity jury instruction. Because we determine an error did not occur, we do not consider whether the error was plain or affected appellant's substantial rights.

**Affirmed.**

13