*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0804**

State of Minnesota,
Respondent,

vs.

Akim Malik Webster,
Appellant.

**Filed June 3, 2024**
**Affirmed**
**Ross, Judge**

Hennepin County District Court
File No. 27-CR-21-7636

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**ROSS**, Judge

Akim Webster slammed his girlfriend's head into a metal object, leaving her unconscious and needing stitches. The prosecutor in Webster's third-degree assault trial invited the jury to speculate why the girlfriend did not testify, suggesting possibly love or fear or loyalty as options. Appealing from his conviction, Webster argues that the evidence was insufficient to prove that his girlfriend suffered substantial bodily harm and that the prosecutor's suggestive argument constitutes misconduct. Because the loss of consciousness and laceration to the head satisfy the substantial-bodily-harm element, and because the prosecutor's misconduct could not have affected the verdict and was therefore harmless beyond a reasonable doubt, we affirm.

## FACTS

An apartment resident was inside her Minneapolis second-floor unit on an afternoon in April 2021 when she heard "crying," "scuffling," and an "assertive male voice" from below her closed window. The woman also heard a sound consistent with a human body slamming against "something hard." She saw from her window a man running away and entering a pickup truck. She also saw blood on the ground. She hurried downstairs and out of the building, finding a bleeding, crying woman talking on a cell phone.

The woman, whom we will call Erika in the interests of her privacy, had dialed 9-1-1 and asked the emergency dispatcher to send an ambulance. Erika reported to the dispatcher, "My boyfriend basically beat my ass . . . and I'm bleeding from my head. I have blood dripping from me." She recounted that her boyfriend had grabbed her by the head and hit

her head "on the railing" outside the apartment building before leaving in a pickup truck. When asked her boyfriend's name, Erika responded, "Akim Webster." Two Minneapolis police officers arrived, and she retold the events similarly.

Emergency medical personnel took Erika to the Hennepin County Medical Center by ambulance, and a registered nurse began treating her. Erika told the nurse that her boyfriend had "pushed her head into an air conditioning unit or a railing" and that she believed she had lost consciousness. She suffered a 2.5-centimeter laceration to her forehead, which required three stitches to close.

The state charged Webster with third-degree assault and felony domestic assault. Erika did not testify at Webster's trial in January 2023. The state introduced the evidence of her contemporaneous account of the assault using an audio recording of the 9-1-1 call, a video recording from two officers' body-worn cameras, and Erika's medical records. Webster's attorney argued in closing to the jury that they must determine witness credibility but insisted that they could not adequately judge Erika's credibility because of her absence from the trial. The prosecutor countered Webster's absent-witness argument during his rebuttal argument:

> So think about it this way: Yes, the elephant in the room is [Erika] isn't here. But you – you don't have to check your common sense and life experiences at the door to think about why. Fear. Fear of confronting someone that attacked her. . . . Fear, fear of confronting their attacker. Love. . . . Still loyal.

Webster's counsel objected, and the district court overruled his objection.

The jury found Webster guilty as charged. The district court convicted Webster on both counts and sentenced him on one count to serve 24 months in prison. Webster appeals.

**DECISION**

Webster urges us to reverse his convictions, maintaining that the evidence did not prove beyond a reasonable doubt the substantial-bodily-harm element of third-degree assault and that the prosecutor engaged in reversible misconduct in his rebuttal. Webster's arguments are not convincing.

**I**

Webster maintains that the evidence is insufficient to support his third-degree assault conviction. We review an appellant's challenge to the sufficiency of the evidence to decide whether the evidence viewed in the light most favorable to the conviction was sufficient to allow the jury to reach its guilty verdict, recognizing the state's burden to prove guilt beyond a reasonable doubt. *State v. Horst*, 880 N.W.2d 24, 39–40 (Minn. 2016). Webster unpersuasively maintains that the state did not prove that he caused Erika to suffer "substantial bodily harm," an element of third-degree assault that means "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which causes a fracture of any bodily member." Minn. Stat. §§ 609.02, subd. 7a, 609.223, subd. 1 (2020). The evidence proved Erika's injuries, and the injuries fall within two of the statutory categories. Erika suffered "a temporary but substantial disfigurement" in the form of a forehead laceration that required three stitches. *See State v. Harlin*, 771 N.W.2d 46, 51 (Minn. App. 2009) (holding there was sufficient evidence of substantial bodily harm where the victim received a scarring cut to her head that required four staples to close), *rev. denied* (Minn. Nov. 17, 2009). And Erika suffered the "temporary but substantial loss" of

4

her brain functions when she lost consciousness during the assault. *See State v. Larkin*, 620 N.W.2d 335, 337 (Minn. App. 2001) (observing that "temporary loss of consciousness, on its own, is substantial bodily harm"). The evidence of Erika's injuries sufficiently supports the guilty verdict.

**II**

Webster also contends that the prosecutor engaged in misconduct. When an appellant has preserved his prosecutorial-misconduct challenge by objecting in district court, we review his challenge to determine whether the misconduct was harmful. *State v. Hunt*, 615 N.W.2d 294, 301–02 (Minn. 2000). The degree of harm required for reversal differs depending on the seriousness of the misconduct. *State v. Caron*, 218 N.W.2d 197, 200 (Minn. 1974). We need not decide the degree of seriousness here because the misconduct that Webster identifies is harmless beyond a reasonable doubt and therefore does not support reversal under any standard.

The prosecutor's argument constituted misconduct. A prosecutor engages in misconduct by inviting the jury to draw an adverse inference from a witness's absence. *State v. Shupe*, 196 N.W.2d 127, 128 (Minn. 1972). The prosecutor here improperly invited the jury to speculate about possible reasons for Erika's absence and then closed the speculation by suggesting the possible reason: "Fear of confronting someone that attacked her. . . . Fear, fear of confronting their attacker. Love. . . . Still loyal." The state had offered no evidence to support any of the prosecutor's suggestions. That the prosecutor was implying a merely rhetorical question does not validate his argument. A prosecutor does not avoid engaging in misconduct by framing an otherwise impermissible argument as

rhetorical. *See State v. Bauer*, 776 N.W.2d 462, 474 (Minn. App. 2009), *aff'd*, 792 N.W.2d 825 (Minn. 2011). Offering the unsupported suggestions of fear, love, and loyalty to explain Erika's absence at trial constituted misconduct.

But for the following reason, we will not reverse based on this misconduct. We will not reverse a conviction based on even serious prosecutorial misconduct if the misconduct was harmless beyond a reasonable doubt. *State v. Jackson*, 773 N.W.2d 111, 122 n.2 (Minn. 2009). The district court properly instructed the jury that the attorneys' arguments are not evidence, and we presume that jurors follow the court's instructions. *State v. Taylor*, 650 N.W.2d 190, 207 (Minn. 2002). More important here, even if the jury had accepted the prosecutor's proposed basis for Erika's absence as true, the acceptance could not reasonably have affected the jury's finding that Webster committed the charged offense. The evidence abundantly established that Webster, whom Erika identified as her boyfriend and by his name to the dispatcher in her 9-1-1 call and to the nurse while she was being treated at the hospital, slammed Erika's head into a metal railing causing her substantial bodily harm. Other evidence corroborated the state's theory that the defendant was the same "Akim Webster" that Erika identified as her assailant, including the apartment resident's testimony describing the assailant's appearance consistent with Webster's appearance. That the prosecutor suggested that Erika might have avoided testifying out of fear, love, or loyalty was therefore almost certainly inconsequential in the jury's decision to find Webster guilty. We therefore have no reasonable doubt that the jury would have

reached the same conclusion if the prosecutor had omitted the improperly suggestive reason for Erika's absence at trial.

**Affirmed.**